# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:15-cr-00088 |
| | ) | Chief Judge Crenshaw |
| MARQUIS BRANDON | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

During the redirect examination of Heather Coleman, the Government played for the jury a video purporting to show Marquis Brandon and a female wrestling on the floor of Coleman's apartment. The Government introduced the video in an effort to establish that Coleman's testimony that the wrestling occurred on the day of the January 22, 2015 Cricket Store robbery was incorrect because the metadata from the video showed that it was taken on January 14, 2015 at 11:53 p.m. – a week before the robbery. Out of the presence of the jury, the Court sustained Brandon's objection to the introduction of the video, and issued an oral ruling to that effect. The Court then instructed the jury to disregard the video in its entirety.

At the time the Court issued its oral ruling, it stated that a written opinion might follow. Before that opinion could be written, however, the Government filed a Motion to Reconsider (Doc. No. 716). The Court heard oral arguments on that Motion on April 30, 2018.

**I.**

In its Motion to Reconsider, the Government asserts that the video and metadata constitutes rebuttal evidence and is specifically excluded from discovery by Federal Rules of Criminal

1

Procedure 16(a)(1)(E) and (G). The former requires disclosure of documents and items that are (1) material to preparing the defense; (2) intended to be used by the government in its case in chief; or (3) obtained from, or belonging to, the defendant. The latter Rule requires that, upon the defendant's request, the Government provide a written summary of any expert testimony that it intends to use in its case-in-chief. The Court is familiar with both Rules; indeed, the Court relied on Rule 16(E) in denying Brandon's motion to exclude four newly-identified witnesses, a police report, and a 911 call on the grounds that the Government could not have been aware of that evidence when it was preparing its case-in-chief for trial. (Doc. No. 703).

In arguing that disclosure of the video was not required under Rule 16(a)(1)(E)ii) because it was not material to Brandon's defense the Government relies on the following language from the Sixth Circuit in United States v. Lykins

> [I]nformation which does not counter the government's case or bolster a defense is not material "merely because the government may be able to use it to rebut a defense position." United States v. Stevens, 985 F.2d 1175, 1180 (2d Cir.1993). Rather, there must be an indication that pre-trial disclosure would have enabled the defendant to "alter the quantum of proof in his favor," not merely that a defendant would have been dissuaded from proffering easily impeachable evidence. Id. In assessing materiality, we consider the logical relationship between the information withheld and the issues in the case, as well as the importance of the information in light of the evidence as a whole.

428 F. App'x at 624. The Government then highlights Lykins's observation that "a Rule 16 violation cannot be sustained based merely on an argument that disclosure would have resulted in reconsideration of defendant's decision to testify or formulation of a more effective defense strategy." Id. at 624-25. It also relies on United States v. McCaleb, 302 F. App'x 410, 415 (6th Cir. 2008) that followed the principles announced in Lykins, and found no abuse of discretion when the trial court admitted a previously undisclosed video showing defendant wearing dark sweat pants at

2

the time of his arrest, after he testified to the contrary on direct examination.

Even though the Sixth Circuit in United States v. Robinson, 503 F.3d 522, 532 (6th Cir. 2007) (citation omitted) stated that Rule 16(a)(1)(E)(ii) "only applies to 'shield' claims that refute the government's arguments that the defendant committed the crime charged," the law on materiality for purposes of that rule may not be as clear-cut as the Government suggests. Both Lykin and McCaleb are unpublished, with Lykin observing that "[m]ateriality under Rule 16 has not been authoritatively defined in th[e Sixth] Circuit." More recent decisions have confirmed the lack of an authoritative definition in this Circuit, including United States v. Clingman, 521 F. App'x 386, 392 (6th Cir. 2013).

Other courts in published decisions have defined Rule 16 more broadly to encompass both inculpatory and exculpatory evidence because "it is just as important to the preparation of a defense to know its potential pitfalls as it is to know its strengths." United States v. Marshall, 132 F.3d 63, 67 (D.C. Cir. 1998). In other words, "[a] defendant who knows that the government has evidence that renders his planned defense useless can alter his trial strategy," or "he can seek a plea agreement instead of going to trial." United States v. Muniz-Jaquez, 718 F.3d 1180, 1183 (9th Cir. 2013); see also, United States v. Doe, 705 F.3d 1134, 1151 (9th Cir.2013) ("Even if the documents [requested under Rule 16] caused [defendant] to completely abandon [his] entrapment defense and take an entirely different path, the documents would still have been 'material to preparing the defense' under Rule 16(a)(1)(E)(i)."). Further, even in the Sixth Circuit, "Rule 16 is intended to prescribe the minimum amount of discovery to which the parties are entitled, and leaves intact a court's discretion to grant or deny the broader discovery requests of a criminal defendant." United States v. Richards, 659 F.3d 527, 543 (6th Cir.2011).

3

In any event, this Court's ruling was not grounded on Rule 16 at all. Instead, the Court based its decision on fundamental fairness, and the Government's failure to comply with the Scheduling Orders in place in this case. Those Orders are not even mentioned in the Government's Motion to Reconsider, or at oral argument on that motion.

**II.**

Coleman's phone was retrieved by Metropolitan Nashville Police Department Detective Andrew Grega sometime around mid-February 2015. Either later that month or in March 2015, Chris Brennan, also with the MNPD, conducted an extraction of the contents on that phone. This case was filed on June 18, 2015, with Brandon added as a defendant on April 18, 2016.

After trial dates were continued due to the addition of defendants, the return of Superseding Indictments, and for other reasons, trial was set to commence against Brandon on April 2, 2018. In anticipation of that trial, the Court held a Status Conference on February 13, 2018, and required that Exhibit Lists be filed by March 16, 2018.

After a Third Superseding Indictment was returned on February 28, 2018, the Court held a previously scheduled status conference, and the parties confirmed that they were ready to proceed to trial on April 2, 2018. At the status conference, the Court also granted the parties' request for an Exhibit Review Conference to be held on March 27, 2018, during which time the Government was to display the tangible evidence that it possessed.

The evidence display showed numerous pictures from Coleman's phone, including several pictures of Brandon holding a weapon. The display did not include a videotape of the wrestling episode, or even suggest existence of such a video. Also absent from the display was the thumb drive containing the contents of Coleman's phone.

4

As the deadline for the filing of exhibit lists neared, the Government asked for an extension of time, and asserted "that it would be most efficient to organize and finish tagging the exhibits after the defense counsel have reviewed the exhibits and the parties can discuss potential evidentiary objections amongst themselves." (Doc. No. 534 at 1). Later, due to medical and family emergencies involving one of the Assistant United States Attorneys, the Government's Motion to Continue Trial Date was granted, the trial was rescheduled to begin on April 16, 2018, and the deadline for filing exhibit lists was extended to April 6, 2018. (Doc. No. 556 at 1). The parties were also ordered to provide a brief summary of each exhibit as a part of the exhibit list. (Id.).

The Government filed its Exhibit List on April 6, 2018. That list identified and described 21 pictures taken from Coleman's phone. While some videos were identified as being taken from surveillance cameras on the premises or adjacent to the location of the alleged robberies and shootings, there was no indication that any potentially relevant video was contained on Coleman's phone.

On April 13, 2018, the Government submitted a bench book of exhibits for the Court's use at trial. The accompanying exhibit list indicated the same pictures from Coleman's phone, but added five new pictures, several photos that affixed date and time stamps, and a list of internet searches on the phone relating to weapons. It also listed as exhibit 3DD "Heather's phone dump on a thumb drive." Again there was no mention of a video captured from Coleman's phone. Nor was there any mention of a Cellbrite report.

The Cellbrite report was prepared by Brennan after trial started to confirm that the date and time stamps on some of the pictures were accurate. It was produced by the Government as Exhibit

3FF on April 25, 2018, long after the trial began.[1]

Against this backdrop the Government played the video from the thumb drive of Coleman's phone. In objecting to its use, counsel for Brandon pointed out that he did not receive the thumb drive until April 4, 2018, which would have been two days into the trial, but for the Government's need for a continuance. At the time, counsel was "working feverishly around the clock on and . . . was focused on the things [he] knew to be issues," in a case that contained 17 counts against his client, and in which the Government indicated that it intended to present proof about the 26 incidents listed on Government Exhibit 33, many of which were unrelated to Brandon, including several thefts and shootings in which Brandon may not have been involved.

Clearly the government did not comply with this Court's discovery Orders. It did not produce the thumb drive at the discovery conference on March 27, 2018, nor was it identified on the Exhibit List filed April 6, 2018. It is hardly surprising that defense counsel believed the timely-identified pictures was the entire universe of evidence that would be used at trial from Coleman's cell phone.

Unlike the video, Brandon knew of the existence of photographs that were later shown to have been taken from Coleman's phone for quite some time. In advance of the trial that was set by Judge Sean F. Cox for June 13, 2017, Brandon filed a Motion in Limine on May 4, 2017, seeking to exclude certain of the photographs because they were unduly prejudicial and the Government "ha[d] not produced any reliable evidence that shows when these photos were taken, or any other authenticating witness." (Doc. No. 211 at 1). Further, according to the statement of defense counsel

---

[1] In an email to defense counsel that same day, the Government indicated that "there is a thumb drive we just received with the extraction report for Heather Coleman's phone,' (Def. Hrg. Exh. 1), even though Brennan testified he performed an extraction on the phone in February or March 13, 2015, and Exhibit 3FF was not produced until he testified.

at oral argument, he received a disk labeled "Heather Coleman's Phone Dump" on May 5, 2017 that contained 375 pictures, but no videos. As a consequence, when counsel received the thumb drive he believed that it, like the disk, contained only pictures, and understandably turned his attention to other trial preparation matters.

### III.

A trial court should consider several factors in determining an appropriate remedy for a discovery violation in a criminal case. "These include: (1) the reasons for the government's delay in producing the materials, including whether it acted intentionally or in bad faith; (2) the degree of prejudice, if any, to the defendant; and (3) whether the prejudice to the defendant can be cured with a less severe course of action, such as granting a continuance or a recess." United States v. Maples, 60 F.3d 244, 247 (6th Cir. 1995); United States v. Davis, 514 F.3d 596, 611 (6th Cir.2008) (applying same factors to Rule 16 violations). "District courts should embrace the 'least severe sanction necessary' doctrine, and hold that suppression of relevant evidence as a remedial device should be limited to circumstances in which it is necessary to serve remedial objectives." Id. at 247–48. "These principles apply with equal force to both the government and the defendant." United States v. Ganier, 468 F.3d 920, 927 (6th Cir. 2006)

Here, accepting that the Government did not know that Brandon would use the wrestling incident as part of an alibi, it has yet to explain why the thumb drive was not produced until April 4, 2018. "Because the government has not given any explanation for the delay, it is difficult, if not impossible, to assess whether the government had any justification for the delay." United States v. Davis, 244 F.3d 666, 671 (8th Cir. 2001).

The degree of prejudice to Brandon is large. The Court does not believe that a recess is

7

appropriate.

With regard to prejudice, Brandon is faced with rebutting a video that he did not see before trial, and likely would endeavor to locate an expert that could rebut the Government's contention that the video was taken a week before the Cricket Store robbery. Presumably, this would have to occur after the Government recalls Brennan and produces yet another Cellbrite report because, as the Court understands it, Brennan's examination of date and time stamps was limited to a handful of pictures, and not the video. See, id. at 671-72 (affirming exclusion of DNA evidence that was "critical" to government's case because the government offered no explanation for turning over the report on "the eve of trial, making it virtually impossible . . . for defendants to evaluate and confront the evidence against them [because] it would have required thorough investigation by defense counsel, including almost certainly retaining an expert witness or witnesses"). Further, the prejudice to Brandon is compounded because he already has to address four new witnesses, accompanying reports, and a 911 call that was produced by the Government (albeit with reasonable justification) after the discovery deadlines, and just days before trial.

Stopping the trial midstream for an indeterminate amount of time would not be fair to the jurors. Moreover, the Government's request that the Court reverse its ruling and admit the video is entirely unworkable because it would add additional layers of confusion to a case that already has its fair share.

If the Court admits the video, it would have to instruct the jury to disregard the instruction that the jurors were to disregard the video. It would also require that the Court allow defense counsel to re-cross Coleman so that he could show that she was unable to recognize any of the individuals or voices on the video, even though the lighting conditions in the courtroom where she

watched the video in the presence of the jury was "perfect."

## IV.

Finally, the Government argues that exclusion of the video "results in a miscarriage of justice" because it "allows the defendant to present a false alibi." (Doc. No. 716 at 11). During arguments in open Court, the Government even went so far as to claim Brandon "fabricated" an alibi.

It is true, as the Government asserts, that a defendant does not have the right to present a false alibi, see United States v. Dye, 538 F. App'x 654, 667 (6th Cir. 2013), but there is no evidence before the Court to support the conclusion that Brandon fabricated anything. Coleman, a Government witness, testified as to her recollection of when the wrestling incident occurred. It may be that her recollection of events that happened more than three years ago is faulty, but that, without more, hardly constitutes fabricating evidence. While the video and metadata may help to clarify Coleman's memory, allowing the admission of that evidence at this point in the trial would be unfair to Brandon, not because it may tend to counter a "false alibi," but because the Government did not comply with this Court's Orders relating to discovery.

## V.

For the foregoing reasons, as well as those stated on the record on April 26, 2018, the video of the wrestling incident taken from Coleman's cell phone (Government Exhibit 3HH) is **EXCLUDED**, and the Government's Motions to Reconsider (Doc. Nos. 716) is **DENIED**. Its Motion to file Motion to Reconsider (Doc. No. 718) is **GRANTED.**

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE